[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was heard as a binding arbitration on March 14, 2002. The plaintiff, Lorri Tamburro, was involved in two separate motor vehicle accidents in Stamford. The first was on March 21, 1997 and the second on November 16, 1998. In the first accident the plaintiff's Chevrolet Blazer was struck by a motor vehicle owned and operated by Mohammed Khan. The Khan vehicle ran a stop sign and hit the plaintiff's vehicle in the left front causing the plaintiff's vehicle to spin, strike the Khan vehicle with its left rear and eventually come to rest against a utility pole. In the second accident the plaintiff's vehicle was stopped at a traffic control signal when it was struck violently in the rear by a motor vehicle owned by Vilma Comoncho and operated by Jose G. Reyez. In both accidents the plaintiff's two minor children, Raven, who was five at the time of the first accident and Ronnie, who was three were passengers in her vehicle. The two children and the plaintiff were extremely upset and traumatized on both occasions. In neither accident is there a question of liability or comparative negligence. In both accidents there was a very substantial impact. CT Page 3755
The Khan vehicle, the vehicle that was involved in the first accident, was covered by an automobile liability policy which provided maximum coverage of $20,000 per person per accident. The Comoncho vehicle was uninsured. Khan's insurer paid the plaintiff the policy limit of $20,000. Neither Comoncho, the owner, or Reyez, the driver in the second accident, have paid anything.
At the time of both accidents the plaintiff's vehicle was covered by a "Personal Auto Policy" issued by the defendant Government Employees Insurance Company (GEICO) to Lot Tamburro and Ronald Tamburro, her husband. The policy contained a provision for uninsured/underinsured motorist coverage pursuant to Connecticut General Statutes § 38a-336. The plaintiff, believing she was entitled to damages for bodily injury in excess of $20,000 for the first accident and damages for bodily injury in the second accident made claims against GEICO, under the underinsured and uninsured provisions of the policy. She brought this lawsuit when GEICO refused to settle her claims to her satisfaction.
Prior to the first accident, the plaintiff who is now 38 years old and has a life expectancy of forty-three years, had a very active life style. She had and still has a full time job as a legal assistant. In addition the plaintiff did her household chores and took care of her children. Moreover, she worked out at a gym, skated, bowled, danced, cycled, gardened and did a great deal of interior decorating and painting in her home. All without pain. Since the first accident she has had to completely halt most of those activities. Those that she is still able to carry on at all, such as occasional cycling and dancing have had to be severely curtailed and are done while suffering discomfort and pain. The plaintiff's situation is exacerbated because her daughter, Raven, who is now ten years old is afflicted with a rare genetic disorder that resulted in mental retardation and causes her to exhibit autistic type behaviors and strange and physically aggressive movements that require physical restraint. The plaintiff, appears to be the only one who, on a regular basis, is able to exert the necessary control over Raven. It is now difficult and painful for her to do so.
On March 21, 1997, the date of the first accident, the plaintiff was taken by ambulance from the accident scene to the Stamford Hospital emergency room. There she complained of a bump on her left scalp, pain in both knees, pain in the upper back and neck and lumbar pain. She was given Motrin and told to go home and rest. Pain and stiffness persisted, however, and five days later she went to Charles W. Needham, M.D., a neurological surgeon, with complaints of pain in her upper back and neck radiating to both shoulders. She also complained of lumbar pain with some radiation into her legs and bruising and swelling of both knees. The plaintiff treated with Needham for over a year. In April 1998 he authored CT Page 3756 a report which stated that the plaintiff had suffered damage to the L4-5 Disc and lumbar and cervical strains as a result of the accident. In his report Needham also stated that the plaintiff had reached maximum improvement and that she had a permanent partial disability of 20%, 10% attributable to the lumbar spine and 10% to the cervical spine. Further he opined that the plaintiff is likely to continue to experience neck and back pain on a periodic or chronic basis. He alluded to surgery as a possibility but felt the plaintiff was not at that time a surgical candidate, he did not however reject that as a possibility in the future.
In her course of treatment after the first accident the plaintiff incurred expenses for, inter alia, emergency room care, five neurosurgical consultations, an orthopedic consultation, diagnostic studies, medication and three months of physical therapy. Her total medical expenses attributable to the first accident amounted to $4,333.42. In addition she had lost wages of $493.00
After the second accident, the plaintiff again was transported by ambulance to the Stamford Hospital emergency room. There she complained of injuries to her chest, neck, back, ribs and knees. She was examined at the emergency room, given Ibuprofen and sent home. The next day she went to her family doctor, Rod Acosta, M.D., at that time she had complaints of neck and back pain, numbness and pain in both arms, badly bruised knees, and pain in her chest, her chest having apparently struck the steering wheel. Acosta sent her for a chest x-ray to rule out rib fractures. Those x-rays were negative.
She returned to Needham who, in a report rendered on February 5, 1999 reaffirmed his diagnosis of the injuries the plaintiff had received in the first accident, i.e., damage to her L4-5 disc and lumbar and cervical strains. He also noted that an MRI showed bulging and drying of the L4-5 disc. He further stated in his report that her lumbar problem was clearly worse since the second accident and that the injuries suffered in the second accident were an acute cervical sprain, acute lumbar sprain, acute chest wall muscular sprain and injuries to both knees. In a subsequent report dated November 9, 1999, Needham expressed his clinical impression that the plaintiff has a lumbar disc abnormality and chronic cervical strain.
In the course of her treatment after the second accident the plaintiff incurred expenses for, inter alia, emergency room care, three orthopedic consultations, two neurosurgical consultations, an internist consultation two MRI's and pharmaceuticals. Her total medical expenses attributable to the second accident are $3,555.94. She also had lost wages in the amount of $438.00. There was no evidence of any degree of permanent partial CT Page 3757 disability attributable to the second accident.
The plaintiff testified at the arbitration hearing as did her husband, her sister and a friend. I must say that I was particularly impressed with the plaintiff's testimony. She did not appear to be a malingerer nor did she attempt to gild the lily or exaggerate her symptoms. This impression was bolstered by the fact that the plaintiff had returned to work shortly after both accidents, probably long before she should have in either instance. Further there was no attempt to run up the medical specials with excessive treatments. The plaintiff's husband and the other witnesses were also believable when they testified concerning the effect on the plaintiff of her injuries. The defendant presented no witnesses.
These two accidents are difficult to evaluate. On the one hand there has not been an extended or extensive course of treatment that has generated huge medical or chiropractic bills. Nor, because the plaintiff was anxious to get back to work, did she lose much time from her employment. On the other hand the accidents, have wrought a sea change in the life of the plaintiff and her family. Things that the plaintiff had enjoyed doing, she can no longer do, and there is a real doubt as to whether she will ever be able to do those things again. Moreover, the chores at home that she is able to do and her employment related activities are now painful when they used to be pain free. She relies on Advil to get her through many days. Further her ability to care for her severely handicapped daughter has suffered as a consequence of the accidents, that consequence must cause the plaintiff worry as to who will care for her daughter if her own condition worsens. Also looming in the background to create further anxiety is the possibility that plaintiff may require surgery in the future.
Furthermore, there was testimony that the plaintiff is no longer the bright, cheerful, energetic person that she was prior to March 21, 1997. Now she always is tired or hurting and not willing or able to undertake activities that she once would have delighted in. To sum it up it is my opinion that the plaintiff's life and health and the life of her family have been severely negatively impacted by the accidents of March 21, 1997 and November 16, 1998.
That having been said it is the arbitrator's conclusion that the plaintiff is entitled to damages arising from the first accident, that of March 27, 1997, in the amount of $85,000 reduced by payments from collateral sources in the amount of $23,426.88 leaving her a net figure of $61,573.12 damages. It is also the arbitrator's conclusion that the plaintiff's husband Ronald is entitled to damages for loss of consortium arising from the first accident in the sum of $5,000. CT Page 3758
It is further the arbitrator's conclusion that the plaintiff is entitled to damages arising from the second accident, that of November 16, 1998 in the amount of $45,000.00 reduced by payments from collateral sources in the amount of $3,226.75 leaving her a net figure of $41,773.25 damages. It is also the conclusion of the arbitrator that the plaintiff's husband Ronald is entitled to damages for loss of consortium arising from the second accident in the amount of $2,500.
The arbitrator's award is without interest or costs to either party.
______________________________ ROBERT J. CALLAHAN, J.T.R.